278 So.2d 404 (1973)
Tom KENNEDY
v.
STATE of Mississippi.
No. 47357.
Supreme Court of Mississippi.
May 29, 1973.
Gary R. Parvin, Starkville, for appellant.
A.F. Summer, Atty. Gen., by T.E. Childs, Jr., Special Asst. Atty. Gen., Jackson, for appellee.
ROBERTSON, Justice:
On October 6, 1971, Tom Kennedy was indicted in the Circuit Court of Holmes *405 County of embezzlement of property, valued at $280.00, of C.K. Dickerson.
On October 12, 1971, his attorney, Fred T. Rucker of Jackson, presented a motion and affidavit for continuance, and a continuance was granted to the April, 1972, term of court.
On April 20, 1972, the appellant was tried. Only two witnesses testified: C.K. Dickerson, appellant's employer, for the State, and Kennedy in his own behalf. The substance of appellant's testimony was that he knew nothing about the invoice of June 8, 1971, to Simmons Gulf Service of Richton, Mississippi, that he had never heard of Simmons Gulf Service Station, and that the merchandise listed on the invoice was not delivered to him on June 8, 1971. Even though defense counsel had had six months to investigate the case and prepare for trial, the defendant himself was the only witness produced and his only defense was a general denial. Rucker and Kennedy were both residents of Jackson. On this evidence, the jury returned a verdict of guilty.
On April 25, 1972, defense counsel Rucker filed a motion for a new trial. On April 24, 1972, Gary R. Parvin, an attorney of Starkville, Mississippi, was employed by appellant and on April 25, 1972, Parvin amended the motion for a new trial and added the additional grounds that:
"[T]he Defendant, Tom Kennedy, was of such a mental state during the trial of this cause that in law, he was mentally incompetent to stand trial and to assist his Counsel. And further, that just this date, newly discovered evidence has come to the attention of Counsel which would establish conclusively the defense of an alibi."
Parvin, newly employed defense counsel, produced eight witnesses: the appellant's wife; his two adult sons, Price Kennedy of Jackson, and Beverley Thomas Kennedy, Jr., of Fort Worth, Texas (who drove all night to be at Lexington, Mississippi, for the hearing on the Motion for a New Trial); his pastor, Dr. David R. Grant of Jackson; his uncle-in-law, Dr. William M. Suttle, who is engaged in the private practice of medicine and surgery, and who was at that time chief of staff of Hinds General Hospital in Jackson; and former business and church associates. While none of these witnesses could actually put his finger on any specific instance of mental incompetency, the testimony of each witness tended to show that when under stress, financial or otherwise, appellant became depressed, treated his problems as if they did not exist, retreated into fantasy land, and became a virtual recluse. It became impossible for appellant to relate to, or communicate with, other people about his troubles, even including his wife and other members of his family with whom he was especially close.
There was testimony from appellant's wife and one of his adult sons that he was in Jackson, Mississippi, all day on June 8, 1971, and could not have been in Durant, Mississippi, the location of appellant's employer.
The trial judge did everything that he could possibly do to get to the bottom of this situation. He took the motion for a new trial under advisement and ordered:
"That the Defendant should be immediately examined by competent doctors to determine his present mental status, particularly with reference to his ability to confer intelligently with his attorneys and to conduct a rational defense."
He committed him to Mississippi State Hospital at Whitfield "for such evaluation and treatment as may be required."
The report from the Mississippi State Hospital is not in the record. We have for consideration only a letter from Parvin to the trial judge, dated June 28, 1972, wherein he stated:
"I cannot glean a definite conclusion from Dr. Bell's letter; however, he does *406 state that the Depressive Neurosis could have interfered with his ability to assist his attorney in the defense of the crime charged."
Judge Clark, the trial judge, still kept the matter under advisement and did not overrule the motion for a new trial until October 10, 1972, at which time he also sentenced appellant to a term of two years in the state penitentiary with credit to be given for the time served in jail, and with one year of the two-year sentence suspended.
We have gone into detail in the facts of this case to show that the trial judge did all that he could possibly do, and acted in a very admirable manner in protecting all of the rights of the accused. Appellant's wife and his two adult sons testified at the hearing on the Motion for a New Trial that they were not informed of the day of trial either by appellant or his trial counsel.
From the evidence adduced at the hearing on the motion for a new trial, we are in considerable doubt that the appellant was mentally competent at the time of his trial on April 20, 1972, to aid and assist his counsel in the presentation of any defense that he might have.
When an accused is being tried for a serious offense, he is at least entitled to have the adult members of his family with him at the trial if they so desire, and the jury is entitled to hear any testimony that the appellant might have in the way of an alibi or other defense.
We feel that under the peculiar circumstances and facts of this case that the conviction and sentence should be reversed and this cause remanded for a new trial.
Reversed and remanded.
RODGERS, P.J., and PATTERSON, INZER and SMITH, JJ., concur.